BONSCHUR v. JOHN SCHEIDIG & CO.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 82.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—EYEGLASSES.

The Bonschur patent, No. 737,327, for eyeglasses, construed, and *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit by Herman E. Bonschur against John Scheidig & Co. for infringement of letters patent No. 737,327, for eyeglasses, granted to complainant August 25, 1903. Decree for defendant, and complainant appeals. Affirmed.

Following is the opinion of the District Court by Hand, District Judge:

This invention is of an improvement in eyeglass clips, which enables the clip to be bent in substantially its own plane so that the glass may be brought from or towards the eyes, or the angle of the glass' plane to the line of the vision may be changed. It had formerly been well known that such clips could be pinched together or bent apart, so as to give more or less friction upon the nose; but when the glass was to be brought in or out from the eyes, or change in angle to the line of vision, it had been customary to have different pieces, each designed for an especial adjustment and not suitable for any other. Bonschur's patent was for a clip which could so be bent within its own plane as to assume these different adjustments without substitution. However, Bonschur's patent is not for a method of adjusting such a clip so that it may be bent into various positions. "My invention is to so" (sic) "form the guard that it can be readily adjusted to fit different contours of noses, and that the lenses can be brought into any required position before the eyes." Any guard so formed as to be readily adjusted to bring the lenses into any required position would be an anticipation of the patent, if it did it in the way disclosed; that is, having an arm secured to a post, a lower scroll member and an upper member projecting upwardly at an angle from the root of the scroll member (claim 5). The defense is the one so usual in cases where the patent is at best a narrow one—i. e., if the claims cover the supposed infringement, they are anticipated; if they are not anticipated, they do not cover. In the view I take of the case, it is necessary to consider only two anticipations, Eggert, 617,676 and Spencer's S. S. clip.

It is clear enough that Eggert did not suppose that the upper and lower parts of his member *3*, which he calls a "base-plate," were to be bent in the plane of the piece. He did expect to bend the clip so that the lenses could be changed in position before the eyes, but it was all by bending the arm *6*, in the plane of the clip, as shown in figures 6 and 7 of his diagrams. That he did not mean to bend the member *8* appears from the fact that he faced it with celluloid. However, except for that celluloid facing and the short length of the lower member, I cannot see the least reason why the relative positions to each other in the same plane of the upper and lower parts of the member *8* should not be changed, so as to effect the whole range of adjustments that can be made out of Bonschur's single clip. The only evidence to the contrary which the record contains is that of Walton, who has never tried bending a clip of Eggert, but thinks it so allied to Fox that he would break it in the attempt, as he apparently has Fox guards (the meaning of his testimony is uncertain at this place). Freeman thinks Eggert could be so bent, and I really cannot see faintest color for doubting it, if the

metal be pliable. Therefore the only grounds of differentiation between Eggert and Bonschur are the scroll member at the bottom, and the setting of the upper member at an angle to the root of the other member. These I shall consider later.

The Spencer clip is in some respects more like the infringing device than the Eggert, in that it has admittedly a scroll piece for a lower member. It, too, was faced with celluloid; but the "S" is so much longer for its thickness than in Eggert that it could certainly be bent freely in its own plane. Yet we find Walton saying that it would be impracticable to bend it at the point where it is joined to the mounting, and that that is the only place it could be bent. He says this because there is a "neck" or narrowing of the metal in Bonschur's guard, but none in Spencer's. Now there is as little "neck" to the scroll member of Bonschur as of Spencer, and each is equally movable; while in the second place a "neck" has absolutely nothing to do with the problem, because the degree of displacement depends upon the relation of the length of the member to the width of the metal where it bends. In Bonschur's lower member, the bending takes place all along the length of the scroll; in his upper member, probably only at the "neck." If Spencer be bent with pliers, both members may be adjusted by a bend all along the scroll. Walton's testimony seems to me quite valueless, in spite of his being vaunted as a practical optician.

Browne's objection is more tenable, for he says that as the Spencer guard until 1903 was in two pieces and as in the area of contact it was very stiff, the guard could be bent only above or below it. To this I answer that it is of no consequence, provided that it could be bent enough anywhere, as it could, and, moreover, to cast the clip in one piece was no invention, as is proved by the change made by Spencer himself at about the same time as Bonschur. As Spencer has the lower scroll, the only thing left possibly for the patent unanticipated is the setting of the upper arm, and, indeed, the file wrapper shows that it was only upon the setting of that arm that the patent was granted.

Now the claims vary a little in describing this feature. Claim 5 says: "An upper member projecting upwardly at an angle from the root of the scroll member." Claim 6 says: "An upper member projecting diagonally upward from a point near the root of the scroll member." The diagram accompanying these claims illustrated what was meant very clearly; but it is quite unlike the complainant's commercial structure and the defendant's clip. Of course, the words may be so juggled, as Browne juggles them, as to have it appear that the defendant's device corresponds to the claim. Indeed, it may be unfair to call it jugglery, because the words, "root of the scroll," when applied to the defendant's device, may be used to describe the part from where the upper member starts, just as by exactly a similar reading the upper member of Eggert may be said to project from the root of the scroll; as, for example, in figures 7 and 9. On the other hand, it may quite as properly be said of the infringing device that the upper and lower parts form a whole member, as in Eggert or Spencer, with a side member attached to it. It much more nearly approaches Eggert as a design than it does Bonschur; and it is, indeed, rather nearer even to Spencer than to Bonschur. When one looks at Bonschur side by side with Eggert, and considers that it was only by the feature mentioned that Bonschur got his patent, one must see almost at a glance that Bonschur is now trying to expand his claim into precisely that field which the office refused to allow it, and is engaged in the congenial task of getting from the court what he was refused by the executive.

One sees well enough what was in the examiner's mind. In the diagram before him the upper member really did spring from the scroll member, which had a continuity on either side of it. No one could possibly say from the designs used that the two members ran into each other; and, though it was possible to say that the upper member of Eggert springs from the root of the scroll, it would have been only a far-fetched interpretation of the claims, and the examiner naturally supposed the words covered only the diagrams, as he had a right to do. Now, the complainant having himself aban-

doned the patent, and adopted Eggert with an enlarged scroll, as shown in Spencer, seeks by that same far-fetched interpretation to cover the device of the defendant. It is unnecessary to say anything of the validity of the patent, properly construed, for here there is no infringement.

Bill dismissed, with costs.

Howson & Howson, of New York City (Charles Howson, of New York City, of counsel), for appellant.

L. W. Southgate, of New York City, for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

PER CURIAM. We agree with Judge Hand in the conclusions reached by him, and, as he has fully discussed the questions involved, we affirm the decree upon his opinion.

---

NATIONAL ELECTRIC SIGNALING CO. v. TELEFUNKEN WIRELESS TELEGRAPH CO. OF UNITED STATES et al.

(Circuit Court of Appeals, Second Circuit. November 11, 1912.)

No. 29.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—APPARATUS FOR WIRELESS TELEGRAPHY.

An order granting a preliminary injunction against infringement of the Fessenden patent, No. 706,736, for apparatus for wireless telegraphy, reversed.

2. PATENTS (§ 324*)—INFRINGEMENT—APPEAL FROM INTERLOCUTORY ORDER— FINAL DISPOSITION OF CAUSE.

The Circuit Court of Appeals, conceding its power, will not dismiss a bill for infringement of a patent on appeal from an order granting a preliminary injunction, where the patent contains a large number of claims which have not been adjudicated, and the record does not show which complainant relies on, nor contain evidence upon which the questions of validity and infringement of some of them can properly be determined.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 600–606; Dec. Dig. § 324.*

Review of interlocutory decree granting or refusing injunction in patent case in Circuit Court of Appeals, see notes to Gill & Fisher v. Browne, 3 C. C. A. 572; Southern Pac. Co. v. Earl, 27 C. C. A. 189; New York, N. H. & H. R. Co. v. Sayles, 32 C. C. A. 484.]

Appeal from the District Court of the United States for the Southern District of New York; E. Henry Lacombe, Judge.

Suit in equity by the National Electric Signaling Company against the Telefunken Wireless Telegraph Company of the United States and others. From an order granting a preliminary injunction, defendants appeal. Reversed.

For opinion below, see 193 Fed. 424.

An order of the Circuit Court for the Southern District of New York granted a preliminary injunction restraining the defendants from infringing 16 of the 35 claims of letters patent No. 706,736, granted August 12, 1902, to Reginald A. Fessenden for apparatus for wireless telegraphy. At the time this order was granted the claims in controversy had been held valid by the Circuit Court for the District of